**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**WILMINGTON PT CORP.,**

                        **Plaintiff,**            **REPORT AND**
                                                **RECOMMENDATION**

                     -against-                         **19-CV-2035 (DLI)**

**PARVINDER S. TIWANA, et al.,**

                        **Defendants.**
-------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       Plaintiff Wilmington PT Corporation ("Wilmington" or "plaintiff") brings this foreclosure action based on diversity jurisdiction against Parvinder S. Tiwana and Jasvir Tiwana (the "borrower defendants"), seeking to foreclosure its mortgage (the "Mortgage") encumbering real property located at 97-10 95th Avenue, Ozone Park, New York 11416 (the "Subject Property"). See generally Complaint (April 9, 2019) ("Compl."), Electronic Case Filing Docket Entry ("DE") #1.[1]

       Currently pending before this Court, on a referral from the Honorable Dora L. Irizzary, is plaintiff's motion to appoint a receiver to collect rents in connection with the Subject Property for the duration of these proceedings. See Notice of Motion (Feb. 4, 2020), DE #25; Memorandum of Law in Support of Plaintiff's Motion to Appoint a Receiver to Collect Rents (Feb. 4, 2020) ("Pl. Mem."), DE #25-1; see also Reply Memorandum of Law in Further Support of Plaintiff's Motion to Appoint a Receiver to Collect Rents (Feb. 19, 2020) ("Reply Mem."), DE #27. The borrower defendants oppose this application. See Memorandum of Law in Opposition to Plaintiff's Motion to Appoint a Receiver

---

[1] Plaintiff has also named the New York City Environmental Control Board ("ECB") as a subordinate lienholder defendant. See, e.g., Compl. ¶ 5. The ECB has not appeared in this action as of the date of this report and recommendation.

to Collect Rents (Feb. 11, 2020), DE #26. For the reasons that follow, this Court recommends that plaintiff's motion be denied in its entirety.

## FACTUAL BACKGROUND

As is set forth in plaintiff's Complaint, on November 6, 2006, the borrower defendants executed and delivered a promissory note (the "Note") to WMC Mortgage Corp. ("WMC Mortgage") in the amount of $134,700.00, promising to repay the principal sum of $134,700.00, loaned by WMC Mortgage, plus interest. See Compl. ¶ 10; Ex. C to Compl. (Note) at pp. 22-24, DE #1-1.[2] Under the terms of the Note, the borrower defendants were required to make payments of principal and accrued interest, on a monthly basis, until the maturity date. See Note ¶ 3 at p. 22. The interest rate was originally fixed at 11.750 percent, and the failure to pay any monthly installments constitutes an event of default. See id. ¶ 4(C). To secure repayment of the loan, the borrower defendants executed and delivered a mortgage (the "Mortgage") on the Subject Property to WMC Mortgage in the amount of $134,700.00. See Compl. ¶ 9; Ex. C. to Compl. (Mortgage) at pp. 6-20. The borrower defendants have not made any payments on the Note since June 1, 2013, and, plaintiff claims, this failure to tender the required payment constitutes a default under the Note and Mortgage. See Compl. ¶ 17. Plaintiff pleads that this default continues to date. See id.

According to the borrower defendants' opposition papers, the lien sought to be foreclosed upon in this action is subordinate to a "first lien mortgage" on the Subject Property, now held by MTGLQ Investors, L.P. ("First Mortgage"). See Def. Opp. at 2; see also Affidavit of Jasvir Tiwana (Feb. 11, 2020) ("Tiwana Aff."), DE #26-2; Assignment of First Mortgage (Feb. 11, 2020), DE #26-3 at pp. 25-26.[3] With respect to that First Mortgage, the borrower defendants entered into a modification

---

[2] The page references correspond to the page numbers assigned by the Court's Electronic Case Filing system.

[3] The borrower defendants' opposition papers erroneously state that the First Mortgage is held by Normandy Mortgage Acquisition Company, LLC ("Normandy Mortgage"). Def. Opp. at 2. However, the record shows that Normandy Mortgage subsequently assigned their interest in the First Mortgage to MTGLQ Investors, which was subsequently recorded on January 14, 2020. See Assignment of First Mortgage.

agreement with Normandy Mortgage and, since March 2019, have regularly made their monthly mortgage payments (totaling $7,363.18) using the entirety of the rents collected from the three tenants on the Subject Property ($7,000.00). See Tiwana Aff. ¶¶ 9, 11-12, 15; Residential Lease Agreements (Feb. 11, 2020), DE #26-5 (the operative lease agreements reflect that the three signatory-tenants pay $3,200.00, $2,000.00, and $1,800.00, respectively). Jasvir Tiwana further avers that the borrower defendants are current on the First Mortgage, and on insurance and tax payments, see Tiwana Aff. ¶¶ 10, 13, and have maintained the Subject Property in good condition, see id. ¶ 14.

## PROCEDURAL HISTORY

On June 19, 2019, the borrower defendants filed their Answer to plaintiff's Complaint, setting forth multiple affirmative defenses. See Answer (June 19, 2019), DE #13. The parties appeared for an initial conference before the undersigned magistrate judge on July 10, 2019, see Minute Entry (July 10, 2019) ("7/10/19 Minute Entry"), DE #16, and, on November 21, 2019, they participated in a mediation session through court-annexed mediation, see Selection of Mediator (Nov. 4, 2019), but were unable to settle the matter, see Pl. Mem. at 2. On February 3, 2020, following the close of fact discovery, see 7/10/19 Minute Entry; 10/24/19 Order, the parties submitted a joint proposed briefing schedule for their anticipated cross-motions for summary judgment, see Proposed Scheduling Order (Feb. 3, 2020), DE #24. One day later, plaintiff filed the instant motion, see Notice of Motion, which was referred to this Court on February 10, 2020, see Order (Feb. 10, 2020).

## DISCUSSION

**I.      Applicable Legal Standard**

Rule 66 of the Federal Rules of Civil Procedure ("FRCP") "govern[s] an action in which the appointment of a receiver is sought." Fed. R. Civ. P. 66; see also Bristol Oaks, L.P. v. Werczberger, No. 95 CV 3973 (FB), 1996 WL 19207, at *1 (E.D.N.Y. Jan. 2, 1996) ("The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles.");

3

Wells Fargo Bank, N.A. v. CCC Atl., LLC, 905 F.Supp.2d 604, 610 n.8 (D.N.J. 2012) ("Federal law and federal practice govern the appointment of a federal equity receiver . . . . [T]o use federal law is not inconsistent with the *Erie* doctrine . . . because the appointment of a receiver does not directly affect the outcome of the case.") (quoting 13-66 Moore's Federal Practice-Civil § 66.09).[4] When a receiver is sought pursuant to Rule 66 in a diversity case, the appointment of a receiver in equity is a remedy that is ancillary to the primary relief prayed for in the suit – the "classic example" involving a plaintiff that has brought a foreclosure action and requests appointment of a temporary receiver pending foreclosure. See U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC, 866 F.Supp.2d 247, 255 (S.D.N.Y. 2012) (citations omitted).

The Second Circuit has described "the appointment of a receiver [as] an extraordinary remedy," entrusted to the discretion of the district court, and has cautioned that such a "remedy should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." Citibank, N.A. v. Nyland (CF8) Ltd., 839 F.2d 93, 97 (2d Cir. 1988) (citation and internal quotation marks omitted); accord Rosen v. Siegel, 106 F.3d 28, 34 (2d Cir. 1997); see also Pl. Reply at 2-3; Gordon v. Washington, 295 U.S. 30, 39 (1935) (the appointment of a receiver is appropriate only where there is a threatened loss or injury to property that only a receivership would avoid). District courts consider the following, non-exclusive factors in deciding whether to appoint a receiver:

> (1) Fraudulent conduct by the defendant; (2) any imminent danger that the property would be lost, injured, or otherwise lessened in value; (3) the inadequacy of available legal remedies; (4) whether the harm to the plaintiff caused by a denial of the appointment would be greater than the injury to those opposing the appointment; (5) the plaintiff's likelihood of success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; (6) whether the property is inadequate security for the outstanding debt; and (7) the financial status of the debtor.

---

[4] In any event, as plaintiff acknowledges, see Pl. Mem. at 5, federal and state standards regarding the appointment of a receiver are likely to be essentially the same, see, e.g., D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc., 550 F.Supp.2d 481, 489 n.50 (S.D.N.Y. 2008); Ryan Beck & Co., Inc. v. Daly Holdings, Inc., No. 06 CIV.5349 RCC, 2006 WL 3775964, at *2 (S.D.N.Y. Dec. 19, 2006).

Miss Jones LLC v. Stiles, No. 17 Civ. 1450 (NSR), 2019 WL 3034906, at *2 (S.D.N.Y. July 10, 2019) (citing cases).[5]  A court weighing an applicant's request for a receivership should also consider whether there exists a contractual provision authorizing the appointment of a receiver.  See Greystone Bank v. Tavarez, No. 09-CV-5192, 2010 WL 11651639, at *2 (E.D.N.Y. Apr. 26, 2010) (citing cases).

## II.  Application

Because plaintiff contends that the Mortgage loan is in default, it seeks an order appointing a receiver to collect the rents and profits derived from the Subject Property during the pendency of this foreclosure action.  See Pl. Mem.  For the following reasons, this Court respectfully recommends that plaintiff's motion be denied in its entirety.

### A. The Burden of Persuasion

As a preliminary matter, "[t]he threshold inquiry of the Court on a motion to appoint a receiver is whether the mortgage contains a clause authorizing such appointment." NWL Properties, Inc. v. 401 E. 89th St. Owners, Inc., 95 CIV. 0085 (JFK), 1995 WL 221078, at *1 (S.D.N.Y. Apr. 12, 1995). This inquiry should occur first because the existence and applicability of a contractual clause authorizing the appointment of a receiver may impact which party bears the burden of persuasion.  See D.B. Zwirn, 550 F.Supp.2d at 491.  Here, Paragraph 22 of the Mortgage states, in pertinent part:

> If Lender requires Immediate Payment in Full under Paragraphs 19 or 20 . . . , then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants . . . .

Ex. C. to Compl. (Mortgage) ¶ 22 at p. 14.  While the party seeking the appointment of a receiver ordinarily must make a clear showing that such an appointment is necessary to prevent irreparable injury to the property interest at stake, see Altissima Ltd. v. One Niagara, LLC, No. 08-CV-756-JTC,

---

[5] "The final two factors, the inadequacy of the property to secure the debt and the financial status of the debtor, alone are insufficient [to] show that appointment of a receiver is appropriate." Miss Jones, 2019 WL 3034906, at *2 (citation omitted).

2009 WL 1322319, at *1 (W.D.N.Y. May 8, 2009) (citing cases), some courts have opined that where the non-moving party expressly consented to the appointment of a receiver in the parties' contractual agreement, "the party opposing the appointment bears the burden of demonstrating why a receiver should not be appointed[,]" D.B. Zwirn, 550 F.Supp.2d at 491.

Citing Paragraph 22 of the Mortgage, plaintiff first argues that the borrower defendants bear the burden of demonstrating why a receiver should not be appointed, in that they "expressly agreed to the appointment of a [r]eceiver pursuant to the terms of the Mortgage upon an event of default." Pl. Mem. at 7. Plaintiff misconstrues both the caselaw and the parties' contractual language; Paragraph 22 authorizes plaintiff to seek judicial appointment of a receiver, but contains "no explicit consent by the defendants to the appointment." Nesbitt Bellevue Prop., 866 F.Supp.2d at 250. Consequently, "the burden remains on the plaintiff." Id.

### B. The Cases Cited by Plaintiff

Plaintiff cites three cases in support of its argument that the language in Paragraph 22 of the Mortgage, coupled with the borrower defendants' failure to make monthly payments on the Mortgage, warrants appointment of a receiver to collect rents. See Pl. Mem. at 7 (citing Nyland, 839 F.2d at 97; Sovereign Bank v. 347 E. 173 LLC, No. 11 Civ. 1061(LBS), 2011 WL 2693525, at *3 (S.D.N.Y. June 29, 2011); D.B. Zwirn, 550 F.Supp.2d at 490-91). The borrower defendants respond that two of these cases are distinguishable, persuasively arguing that the courts in Nyland and Sovereign Bank "held that the borrower failed to make the loan and tax payment[s] and diverted rents[,]" and that those additional "factors are not present here." Def. Opp. at 5. In Nyland, the Second Circuit affirmed the appointment of a receiver in response to the mortgagor's repeated defaults and after determining that allowing the mortgagor's managing agent to have a continued role in managing the property would be harmful to the property's marketability, and would reduce the value of the security represented by the mortgage. See 839 F.2d at 97. Meanwhile, in Sovereign Bank, Judge Leonard B. Sand of the United

6

States District Court for the Southern District of New York appointed a receiver in response to several events of default, including the "failure to pay real estate taxes, which strongly supported the appointment of a receiver[,]" 2011 WL 2693525, at * 3 (citations and internal quotation marks omitted).[6]

The third case cited by plaintiff, D.B. Zwirn, involved a financial dispute regarding a radio broadcast property, 550 F.Supp.2d at 482-83, and an insolvent defendant that failed to pay property taxes or to maintain the property and preserve its value, see id. at 491-92. Moreover, the court's discussion of the motion to appoint a receiver in D.B. Zwirn was contained in dicta, as the court had already held that it lacked subject matter jurisdiction and was remanding the case to state court. See id. at 486-89. Significantly, even though D.B. Zwirn involved contractual language pursuant to which the defendant had expressly consented to the appointment of a receiver in the event of a default, the court observed that the existence of such a contractual provision "is a factor that the Court considers" but "does not [] dispose of the Court's inquiry in plaintiff's favor." Id. at 490-91.

Accordingly, this Court does not view the contractual language in the parties' Mortgage to be dispositive of plaintiff's motion; instead, the Court must determine whether there are any additional factors present in the instant case that counsel in favor of granting plaintiff's request for a receivership.[7]

---

[6] In other cases in this District, courts have appointed receivers in response to the borrower's failure to pay real estate taxes. See, e.g., Greystone, 2010 WL 11651639, at *2 (noting that the borrower defendants had failed to pay their real estate taxes and insurance costs on a residential building).

[7] As part of its argument, plaintiff asserts that the borrower defendants' continued collection and use of rental income without paying the second mortgage would be a substantial windfall to the borrower defendants at plaintiff's expense. See Pl. Mem. at 7. But plaintiff neither cites case law in support of this proposition nor explains how the borrower defendants would receive a windfall at plaintiff's expense if plaintiff were to ultimately succeed in this foreclosure action.

7

### C. Other Equitable Considerations

Apart from relying on the contractual provision in the Mortgage, plaintiff argues that its "collateral for the [l]oan is in imminent danger of being lost, materially injured, diminished in value, or squandered, as the rents . . . are not being used to repay the [l]oan." Pl. Mem. at 7. According to plaintiff, the borrower defendants "are mismanaging the [Subject] Property such that no rents are being passed along to Plaintiff and is [sic] thus impairing Plaintiff's collateral." Id. at 7-8. But plaintiff does not explain how the property is being mismanaged, nor does it cite to case law involving similar factual predicates. By contrast, the borrower defendants persuasively respond that they "have protected and cared for the premises, which they intend to make their home and [have] provided heat, water, and electricity to the building." Def. Opp. at 5; see also Tiwana Aff. ¶¶ 13-14.

To be sure, other courts in this Circuit have appointed receivers based on the "imminent danger" factor cited by plaintiff when presented with circumstances that jeopardized the structural integrity of the property and/or significantly diminished its value. See, e.g., Miss Jones, 2019 WL 3034906, at *4 (granting plaintiff's request for a receiver based upon a showing that defendant allowed leaks in the bathrooms to degenerate into leaks through the floors and ceilings below and failed to fix roof leaks and damaged gutters)[8]; Sovereign Bank, 2011 WL 2693525, at *3 (appointing a receiver, in part, because the borrowers allowed at least one building to fall into serious disrepair); F.D.I.C. v. Vernon Real Estate Invs., Ltd., 798 F.Supp.1009, 1013 (S.D.N.Y. 1992) (receiver appointed in response to record evidence showing a significant drop in the property's appraised value, and that all but one commercial tenant had vacated the premises). Even where a mortgagor defendant fails to apply rental income from the subject property towards the outstanding sums owed to the plaintiff, courts will appoint receivers only if multiple factors support granting the requested relief. See, e.g.,

---

[8] Miss Jones is distinguishable on other grounds as well. See infra pp. 9-10 n.9.

8

Sovereign Bank, 2011 WL 2693525, at *3; Wells Fargo, 905 F.Supp.2d at 615-16 (granting plaintiff's motion to appoint a receiver after considering the danger of waste and delays in commercial foreclosure). For example, in Greystone, the Honorable Sandra L. Townes of this District appointed a receiver based on multiple factors, including that the defendants had not paid real estate taxes and insurance costs for the building; that the retail unit in the building had remained vacant, thereby impacting the marketability of the unit; and that the plaintiff had shown a probability of success on the merits in light of the defendants' admission that they were in default and were not able to pay the existing balance. See 2010 WL 11651639, at *2.

This case stands in sharp contrast to Greystone and the various other cases referenced above. The borrower defendants are current on their insurance premiums and on the taxes on the Subject Property, see Def. Opp. at 4; Tiwana Aff. ¶ 13; there are three tenants currently paying rent on the Subject Property, see Def. Opp. at 2; Tiwana Aff. ¶ 12; and the borrower defendants do not admit that they are in default, for the reasons set forth in their Answer and because, according to their opposition papers, they filed for Chapter 7 Bankruptcy in 2011, purportedly discharging plaintiff's loan under section 727 of title 11 United States Bankruptcy Code. See Def. Opp. at 5; Tiwana Aff. ¶ 6.

Additional factors considered by courts when assessing whether to appoint a receiver are also absent here. See *supra* p. 4 (listing factors that courts consider when evaluating a request for a receivership). By way of example, nothing in the record suggests that the borrower defendants engaged in fraudulent conduct when dealing with the mortgagee, nor does this Court have reason to believe that the Subject Property is diminishing in value under the stewardship of the borrower defendants.[9] This Court also has almost no information regarding the financial status of the borrower

---

[9] The Court in Miss Jones cited a similar factor as part of its analysis: whether the harm to the plaintiff caused by denial of the appointment of a receiver would be greater than the injury to those opposing the appointment. See 2019 WL 3034906, at *5. Ultimately, that court concluded that absent the appointment of a receiver, the plaintiff would be significantly harmed because the defendant was not using rental income to maintain the property and because the property was likely to diminish in value without intervention.
[footnote continues]

defendants, as plaintiff offers no evidence relating to the borrower defendants' current financial state. The borrower defendants, meanwhile, attest that they use the entirety of the rental income generated by the Subject Property to pay the Subject Property's first mortgage. See Def. Opp. at 2; see also Tiwana Aff. ¶¶ 11-12; Residential Lease Agreements (Feb. 11, 2020), DE #26-5. These factors do not favor granting plaintiff's application. See Melnick v. Press, No. 06-CV-6686 (JFB)(ARL), 2007 WL 2769490, at *2 (E.D.N.Y. Sept. 21, 2007) (Bianco, J.) (denying motion to appoint receiver where movants "failed to establish that there is an imminent danger that the properties or additional assets will be lost or squandered if a temporary receiver is not appointed, nor have they established that the defendant is engaging in fraudulent activity").

Plaintiff offers two additional arguments in its motion papers in support of its request: first, that without a receiver, plaintiff will be effectively prohibited from enforcing its rights to the rent provisions in the Mortgage, see Pl. Mem. at 8, and second, that a receiver will allow for transparency and regular reporting, an integral aspect to maintaining the value of the property, see id. With respect to the former, while plaintiff may not be able to collect rents during the pendency of this lawsuit without the appointment of a receiver, this reason, without more, is an insufficient basis on which to grant the application. Nor does the existence of a contractual provision allowing for a receiver to collect rents necessarily entitle the mortgagor to the appointment of a receiver. See supra pp. 6-7. As to plaintiff's desire for transparency and regular reporting, this Court is not persuaded that the borrower defendants' alleged failure to communicate with plaintiff prevented plaintiff from obtaining information (either from defense counsel or through discovery) concerning the condition and value of

---

See id. By contrast, the borrower defendants in the instant case aver, without contradiction, that they are maintaining the property; the Court thus has been provided no reasonable basis on which to conclude that the property value would decrease without the appointment of a receiver.

In addition, the borrower defendants would likely suffer significant harm by the granting of plaintiff's application, as they would be placed at risk of defaulting on the recently received loan modification agreement from the first mortgage holder. See Tiwana Aff. ¶¶ 10-12, 15.

the Subject Property.  See Pl. Mem. at 8.  This argument thus affords an insufficient basis for appointing a receiver.

Having considered the parties' arguments and proffered facts, this Court respectfully recommends that the District Court exercise its substantial discretion and deny plaintiff's motion for a receiver.  Such an appointment is an extraordinary remedy and ought not to be granted solely as a matter of contractual right, but rather, in extreme situations, the likes of which are not present here.  See, e.g., Fortress Credit Corp. v. Alarm One, Inc., 511 F.Supp.2d 367, 371 (S.D.N.Y. 2007).[10]

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the District Court deny plaintiff's motion to appoint a receiver in its entirety.  Any objections to the recommendations contained herein must be filed with Judge Irizarry on or before **April 8, 2020**.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**SO ORDERED.**

**Dated:   Brooklyn, New York
             March 25, 2020**

/s/ *Roanne L. Mann*
**ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE**

---

[10] Because this Court recommends denying plaintiff's motion, it need not address the merits of the borrower defendants' argument that plaintiff failed to take appropriate action to assert its rights to enforce its security in rents, see Def. Opp. at 3-4, or plaintiff's response that the request for the appointment of a receiver is enough to vest the right to rents and profits, see Reply Mem. at 2-3.