UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X
WILMINGTON PT CORP.,

                                Plaintiff,

                -against-

PARVINDER S. TIWANA; JASVIR
TIWANA; and NEW YORK CITY
ENVIRONMENTAL CONTROL
BOARD,

                                Defendants.
-------------------------------------------------------X

<u>**REPORT AND
RECOMMENDATION**</u>
19-CV-2035 (DG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On April 9, 2019, Plaintiff initiated this foreclosure action against Defendants

Parvinder Tiwana, Jasvir Tiwana, and the New York City Environmental Control

Board,[1] seeking to foreclose a mortgage (the "Mortgage") encumbering real property

located at 97-10 95th Avenue, Ozone Park, NY 11416, in Queens County (the

"Property"). (Complaint ("Compl."), ECF No. 1.) Plaintiff now moves for summary

judgment. In response, Defendants cross-moved to dismiss the action, arguing that

Plaintiff has not established standing and fails to state a claim on which relief can be

granted. On September 13, 2022, the Honorable Diane Gujarati referred this motion

to the assigned magistrate judge for a report and recommendation, after which time

the case was transferred to the undersigned. For the reasons set forth herein, the

Court respectfully recommends that Plaintiff's motion for summary judgment be

granted, and that an order be entered ordering foreclosure and sale of the Property.

The Court further recommends that Defendants' cross-motion to dismiss be denied.

---

[1] The New York City Environmental Control Board has not appeared in this action
and has failed to answer or otherwise respond to the complaint.

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

On November 6, 2006, Defendant Parvinder Tiwana executed a Note to WMC Mortgage Corp., promising to repay the principal sum of $134,700, plus interest. (*See* Note with Endorsements and Allonges, Ex. C to Compl. ("Note"), ECF No. 1-1, at ECF pp. 22–24; Plaintiff's 56.1 Statement ("Pl.'s 56.1 Statement"), ECF No. 62-2, ¶ 2.) To secure the loan, the borrower Defendants, Parvinder Tiwana and Jasvir Tiwana (referred to as "Defendants"), executed a mortgage in the amount of $134,700 to WMC Mortgage Corp. on the same day. (Pl.'s 56.1 Statement, ECF No. 62-2, ¶ 3; *see also* Mortgage ("Mortg."), Ex. B to Compl., ECF No. 1-1, at ECF pp. 6–18.[2]) Under the terms of the Note, Defendants were required to make payments of principal and accrued interest, on a monthly basis, until the maturity date of the Note. (*See* Note, ECF No. 1-1, at ECF p. 22, ¶ 3.) The interest rate was originally set at 11.75 percent, and the Note provided that a failure to pay any monthly installment would constitute a default. (*See id.* ¶¶ 2, 4(c).) The Note required payments to be made on the first day of each month beginning on January 1, 2007. (*See id.* ¶ 3.) Allonges to the Note demonstrate that the Mortgage was subsequently assigned to Greenwich Investors XXXIII, LLC; Dreambuilder Investments, LLC; and Trinity Financial Services, LLC. (*See* Compl., ECF No. 1, ¶¶ 11–14; Note, ECF No. 1-1, at ECF pp. 21–27.)

On June 7, 2011, Defendants filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Virginia (case number 11-14224-RGM).

---

[2] All of Plaintiff's exhibits to the original complaint were filed together under ECF entry 1-1. Accordingly, citations to these exhibits include the ECF page number for reference.

(Defendants' Supplemental Brief ("Defs.' Supp."), ECF No. 67, at 1.) Defendants

were granted a discharge in bankruptcy on September 19, 2011; the order of

discharge included a discharge of the Note.[3] (*Id.*; Bankruptcy Discharge Order, Ex. I

to Defs.' Mem., ECF No. 63-11, at 2–3.) Defendants have not made any payments on

the Note since well before June 1, 2013, the date of default alleged in the complaint.

(Tr. of Pre-Mot. Conf., ECF No. 62-4, at ECF p. 121, ll. 15–21 (representing that the

Mortgage has been in default since the economic crash in 2008); *see also id.*, at ECF p.

122, ll. 8–12; *id.*, at ECF p. 154, ll. 1–4 (representation by Defendants' counsel that

Defendants had not been paying the first Mortgage since 2007 or 2008); Defs.' Supp.,

ECF No. 67, ¶ 3 ("Defendants Defaulted on their Mortgages in 2008.").)

## II. Procedural History

As set forth above, Plaintiff initiated this action on April 9, 2019, with the filing

of the complaint and accompanying exhibits. Exhibit C to the complaint included

the Note and allonges. (Note, ECF No. 1-1, at ECF pp. 22–27.) Of particular relevance

here, the final allonge, which evidences the assignment of the Note from the

previous holder, Trinity Financial Services, LLC, has a blank line following the

phrase "Pay to the order of." (*Id.* at 27.) Exhibit D to the complaint comprises

documentation demonstrating the assignment of the Mortgage to Plaintiff, including

the dates the assignments were recorded at the Queens County Clerk's Office.

(Assignments of Mortg., Ex. D to Compl., ECF No. 1-1, at ECF pp. 29–37.) The

---

[3] Although the bankruptcy discharge relieved Defendants of personal financial
liability on the Note, the mortgagee's right to foreclose on the Mortgage remained. *See
Johnson v. Home State Bank,* 501 U.S. 78, 82–83 (1991) (noting that a discharge in a Chapter 7
bankruptcy liquidation "extinguishes *only* 'the personal liability of the debtor.' 11 U.S.C.
§ 524(a)(1). Codifying the rule of *Long v. Bullard,* 117 U.S. 617 [] (1886), the Code provides
that a creditor's right to foreclose on the mortgage survives or passes through the
bankruptcy. *See* 11 U.S.C. § 522(c)(2).").

assignment of the Mortgage from Trinity Financial Services, LLC to Plaintiff is dated September 18, 2018, and was recorded by the Queens County Clerk's Office. (*Id.* at ECF pp. 36–37.) The parties disagree about when Plaintiff obtained the original Note, as discussed *infra*, but notwithstanding the blank line on the allonge, Plaintiff alleged in the complaint that "Plaintiff is in physical possession and is the owner and holder of said original Note with endorsements and allonges and Mortgage." (Compl., ECF No. 1, ¶ 16.)

Defendants filed their answer on June 19, 2019, asserting numerous affirmative defenses. (Answer, ECF No. 13.) Of relevance here, Defendants' second affirmative defense[4] asserts that Plaintiff lacks standing because "[t]here is nothing in the Complaint evidencing that the Plaintiff is the owner and holder of the subject Note and Mortgage." (*Id.* ¶ 6.) Defendants' third affirmative defense avers that Plaintiff fails to state a claim on which relief could be granted because Plaintiff has not established that it has a right to foreclose on the Note and Mortgage. (*Id.* at ¶¶ 10–12.) Defendants also assert, in their fourth and fifth affirmative defenses, that Plaintiff did not comply with §§ 1303, 1304, and 1306 of the New York Real Property

---

[4] Defendants' first affirmative defense was that Plaintiff had failed to establish subject matter jurisdiction because of a lack of complete diversity, an argument they no longer advance. (*Compare* Answer, ECF No. 13, ¶¶ 1–2, *with* Defs.' Mem., ECF No. 63-1.) The Court, however, has an independent duty to analyze subject matter jurisdiction, and finds it here. The complaint alleged that Plaintiff Wilmington PT Corp. is a citizen of Delaware and Florida, and Defendants Parvinder and Jasvir Tiwana were residents and citizens of New York. (Compl., ECF No. 1, ¶¶ 2–3.) In addition, Plaintiff has submitted its certificate of incorporation, which indicates that it is a Delaware Corporation. (*See* Pl.'s Certificate of Incorporation, Ex. C to Weinreb Decl., ECF No. 62-4, at ECF p. 76.) The Court notes that Defendants were served in Virginia shortly after the complaint was filed. (Affs. of Service, ECF Nos. 8, 9.) Regardless of whether Defendants were domiciled in New York or Virginia when the case started, diversity of citizenship between the parties has been established.

Actions and Proceedings Law ("RPAPL"), and, relatedly, failed to provide proper notices of default and acceleration. (*Id.* at ¶¶ 13–18.)[5]

On June 22, 2020, Plaintiff first moved for summary judgment, to which Defendants responded by cross-moving for dismissal and opposing summary judgment. (*See* First Mot. for Summary J., ECF No. 35; Defs.' First Cross Mot. to Dismiss for Failure to State a Claim and in Opp'n to Pl.'s Mot. for Summary J., ECF Nos. 36 & 37.) On August 24, 2020, the Honorable Roanne L. Mann issued a report and recommendation, recommending that the then-pending motions be denied without prejudice and that the case be stayed "until the New York Court of Appeals answers the certified question in [*CIT Bank N.A. v. Schiffman*, 948 F.3d 529 (2d Cir. 2020)]."[6] (Report & Recommendation ("R&R"), ECF No. 42, at 5.) The Honorable Dora L. Irizarry later adopted Judge Mann's R&R, and the case was stayed. (Order Adopting R&R, ECF No. 44.) Judge Mann lifted the stay following the decision in *Schiffman*, and the parties then unsuccessfully engaged in settlement negotiations.

---

[5] Defendants also asserted the following additional affirmative defenses in their Answer: (1) that the action was barred by the statute of limitations (Answer, ECF No. 13, ¶¶ 19–20); (2) that Plaintiff's claims were barred by the doctrines of waiver, estoppel, and laches (*id.* ¶¶ 21–22); (3) that Plaintiff failed to inform Defendants of loss mitigation options in accordance with 12 C.F.R. § 1024.39 (*id.* ¶¶ 23–24); and (4) that Plaintiff "unreasonably delayed in filing the action, causing excessive interest to accrue, which the Court should toll as a matter of equity and pursuant to CPLR 5001(a)," (*id.* ¶¶ 25–26). These defenses were not raised in connection with the instant motions, and are therefore deemed abandoned. (*See* Defs.' Mem., ECF No. 63-1.) *Conklin v. U.S. Immigr. & Customs Enf't*, No. 20-CV-8178 (LTS), 2023 WL 2537665, at *15 (S.D.N.Y. Mar. 16, 2023) ("Generally, an argument not addressed in an opposition to a summary judgment motion is considered waived.").

[6] The Second Circuit certified two questions to the New York Court of Appeals in *CIT Bank N.A. v. Schiffman*, 948 F.3d 529 (2d Cir. 2020). The question that is relevant here was as follows: "Where a foreclosure plaintiff seeks to establish compliance with RPAPL § 1304 through proof of a standard office mailing procedure, and the defendant both denies receipt and seeks to rebut the presumption of receipt by showing that the mailing procedure was not followed, what showing must the defendant make to render inadequate the plaintiff's proof of compliance with § 1304?" *Id.* at 538. The New York Court of Appeals answered in *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 557 (2021), as discussed *infra* Section II.C.1.a.

(*See* Nov. 8, 2021 ECF Order (lifting stay); Jan. 13, 2022 ECF Minute Entry; Pl.'s 56.1 Statement, ECF No. 62-2, ¶ 11 (noting unsuccessful mediation).) Thereafter, the case was reassigned to the undersigned magistrate judge.

Presently before the Court are Plaintiff's second motion for summary judgment and Defendants' cross motion to dismiss. (*See* Notice of Mot., ECF No. 62 and Pl.'s Mem. in Supp. ("Pl.'s Mem."), ECF No. 62-1; Defs.' Cross Mot. to Dismiss and in Opp'n to Pl.'s Mot. for Summary J., ECF No. 63, and Defs.' Mem. in Opp'n ("Defs.' Mem."), ECF No. 63-1.) In support of the motion for summary judgment, Plaintiff included a Rule 56.1 statement of undisputed facts, as well as affidavits and declarations in support. Defendants did not file a Rule 56.1 counterstatement.[7]

In opposition to Plaintiff's motion, Defendants raise three main arguments. First, Defendants assert that Plaintiff has not established standing to foreclose on the Mortgage because it has failed to demonstrate that it was the holder or assignee of the underlying Note at the time the action was commenced, and that Plaintiff thus lacks capacity to bring this foreclosure action. (Defs.' Mem., ECF No. 63-1, ¶¶ 7–10.) Defendants also argue that Plaintiff has failed to adequately demonstrate compliance with RPAPL § 1304. (*Id.* ¶¶ 12–30.) Finally, Defendants contend that Plaintiff failed to properly allege in the complaint that Plaintiff was the owner of the

---

[7] E.D.N.Y. Local Civil Rule 56.1(c) expressly provides: "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Because Defendants did not file a counterstatement, the facts asserted in Plaintiff's Rule 56.1 statement are deemed true for purposes of Plaintiff's motion for summary judgment. *See, e.g.*, *Clerical Apparel of N.Y., Inc. v. Valley Forge Ins. Co.*, 209 F.R.D. 316, 320 (E.D.N.Y. 2002) ("Having failed to file any meaningful opposition to the present motion, and, specifically, a Local Civil Rule 56.1 Counter Statement, the Court must assume that [the non-movant] admits the material facts as stated in [the movant's] Local Civil Rule 56.1 Statement.").

Note and Mortgage, as required under RPAPL § 1302. (*Id.* ¶¶ 32–37.) Each of Defendants' arguments is styled as a ground for dismissal of the action as well as a basis for denial of Plaintiff's motion for summary judgment.

On January 25, 2023, the Court issued an order directing the parties to submit supplemental briefing addressing the following matters:

> (1) whether there is a material dispute over whether the Note was discharged in bankruptcy; (2) whether there are issues of fact in dispute on the question of what, if any, legal obligation rendered a payment from Defendants "due and payable on June 1, 2013"; (3) whether there is a material dispute on the question of whether Defendants are in default on the Mortgage; (4) the appropriateness of the relief Plaintiff seeks in the Complaint, informed by the question of whether the Note was in fact discharged in bankruptcy; and (5) if the Note has been discharged, whether Plaintiff has stated a claim on which relief can be granted in light of the *in personam* nature of this action against Defendants, or whether this case, as currently pleaded, may be treated as an action *in rem*.

(Jan. 25, 2023 ECF Order (quoting Devico Aff., ECF No. 62-3, ¶ 10).)

Defendants' supplemental brief represents that there are no material disputes that (1) the Note was discharged in Defendants' 2011 bankruptcy proceedings; (2) Defendants have no continuing legal obligation to pay the discharged Note's monetary debt; (3) Defendants defaulted on their mortgage payments in 2008 and remain in default on the Mortgage; and (4) Plaintiff may not seek a money judgment against Defendants for the unpaid Note. (Defs.' Supp., ECF No. 67.) Defendants reiterated their argument, however, that there *is* a material dispute regarding whether Plaintiff was the holder of the Note at the start of the foreclosure action. (*Id.* § 3.) Defendants stated that, because their personal financial obligations under the Note were discharged in bankruptcy, only *in rem* liability against the subject Property remains. (*Id.* § 5.) Finally, Defendants allege that because there is a senior mortgage encumbering the Property (held by a nonparty) valued at over $1.1

million, which is greater than the estimated $1 million value of the Property, there is no equity in the Property left for Plaintiff. (*Id.* (including the subheading "The Value of Plaintiff's *In Rem* Claim, if any, is Zero").)[8]

Plaintiff's supplemental brief agreed that Defendants defaulted on their Mortgage and that Defendants' financial obligations on the Note were discharged in bankruptcy. (Plaintiff's Supplemental Brief ("Pl.'s Supp."), ECF No. 68, §§ 1–3.) Accordingly, Plaintiff clarified that it "is not seeking a money judgment against Defendants. . . . Plaintiff is ultimately merely seeking a judgment of foreclosure and sale, *i.e.*, *in rem* relief." (*Id.* § 4.) Plaintiff also acknowledged that they hold the junior mortgage on the Property and that any foreclosure and subsequent sale of the Property would be subject to the senior mortgage. (*Id.*)

---

[8] Defendants' argument regarding the value of the property has no bearing on the summary judgment analysis. In support of this argument, Defendants primarily rely on a case in which the Second Circuit concluded that because "the value of the residential property underlying defendants' lien is insufficient to cover any portion of the lien," the lien was wholly unsecured and could be voided in a Chapter 13 bankruptcy plan. *In re Pond*, 252 F.3d 122, 127 (2001). (*See* Defs.' Supp., ECF No. 67, § 5 (discussing *In re Pond, Johnson v. Home State Bank*, 501 U.S. 78, 78 (1991), and *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 239 (1989)).) The cases cited by Defendants, which concern bankruptcy issues, are inapposite. To the extent that Defendants are arguing that the Mortgage in this case is not secured by the Property because it is underwater, Defendants have not identified any evidence in the record regarding the value of the Property. In addition, as Plaintiff has noted, "there has been no judicial finding as to the equity of the property." (Pl.'s Supp., ECF No. 68, § 5.) Moreover, Defendants have proffered no authority for the proposition that a junior mortgage holder cannot foreclose because a property's value is believed to be less than that owed on a senior mortgage. *See* RPAPL § 1315 (providing that in the event a senior share owner does not "commence an action for the enforcement of such bond or note and mortgage," then "such junior participant may exercise any and all options and remedies provided in such bond or note and mortgage or otherwise available to any holder thereof"). Accordingly, Defendants' speculative argument that the value of Plaintiff's *in rem* claim is zero does not undercut the analysis as to whether Plaintiff is entitled to summary judgment.

**DISCUSSION**

## I. Standing to Commence Foreclosure

### A. Relevant Factual Background

Defendants have made much of the fact that, at the time Plaintiff filed this case, the copy of the allonge attached to the Note evidencing reassignment from Trinity Financial Services, LLC, the holder of the Note immediately before Plaintiff, includes a blank line following the "Pay to the order of:" line.[9] (*See* Note, ECF No. 1-1, at ECF p. 27.) To answer the question about whether Plaintiff was, in fact, the holder of the original Note, the parties arranged for an inspection of the Note. Defendants photographed the Note during that inspection, and "found that the Original Note had a specific endorsement to [Plaintiff]." (Defs.' Mem., ECF No. 63-1, ¶ 27; *see* Defs.' Photograph of Note, Ex. C to Defs.' Mem., ECF No. 63-5, at 7 (photograph of original Note taken by defense counsel, showing Plaintiff's name on the allonge, indicating reassignment of the Note from Trinity Financial Services, LLC).) Due to this discrepancy, Defendants contend that "there are two versions of the Note," and argue that "Plaintiff was not in possession of the Note endorsed to the Plaintiff at the commencement of the action" and that "Plaintiff came into the possession of the Note after the commencement of this foreclosure action." (Defs.' Mem., ECF No. 63-1, ¶ 7.) Defendants do not actually appear to contest that Plaintiff is the current Note-holder, but question whether Plaintiff had standing to initiate

---

[9] In their opposition brief, Defendants contend that Plaintiff has failed to establish, *prima facie*, (1) that Plaintiff had standing at the commencement of the action (Defs.' Mem., ECF No. 63-1, ¶ 3); (2) compliance with RPAPL § 1304 (*id.* ¶¶ 14, 16); and (3) that the complaint alleges sufficient facts to state a case for foreclosure (*id.* ¶ 34). To the extent Defendants are arguing that each of these matters must be addressed in evaluating whether Plaintiff established its *prima facie* case for foreclosure (*see* Section II.B., *infra*), it is ultimately immaterial whether these arguments are styled as defenses versus failures to make a *prima facie* showing.

this suit, and relatedly, whether they could even bring suit under the requirements of RPAPL § 1302, as discussed *infra* Sections I.B. and II.C.2.

As an initial matter, the Court notes that Plaintiff asserted, both in the complaint and in its Rule 56.1 statement, that it was the holder of the Note and Mortgage when this case began. (*See* Compl., ECF No. 1, ¶ 14 (asserting that the Mortgage was assigned to Plaintiff on September 18, 2018, was recorded in Queens County on October 23, 2018, and that the "Note was transferred by the affixation of a proper allonge"); Pl.'s 56.1 Statement, ECF No. 62-2, ¶ 8 ("Plaintiff was in physical possession and was the owner and holder of the note and mortgage when the Complaint was filed.").) As noted above, Defendants failed to file a Rule 56.1 counterstatement, leaving Plaintiff's assertion uncontradicted.

### B. Analysis

In New York, "'[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 544 (N.Y. App. Div. 2d Dep't 2015)); *see also* RPAPL § 1302(1)(a) ("Any complaint served in a proceeding initiated on a residential mortgage covering a one to four family dwelling pursuant to this article must contain an affirmative allegation that at the time the proceeding is commenced, the plaintiff: (a) is the owner and holder of the subject mortgage and note . . . .").

"Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff." *E. Sav. Bank, FSB*, 631 F. App'x at 15 (quoting *Wells Fargo Bank, NA v. Ostiguy*, 8 N.Y.S.3d 669, 671 (N.Y. App. Div. 3d Dep't 2015)).

"An endorsement in blank renders the note as bearer paper under the U.C.C. as enacted and in effect in New York, and negotiation of bearer paper is effectuated by delivery." *In re Escobar*, 457 B.R. 229, 240 (Bankr. E.D.N.Y. 2011) (citing N.Y. U.C.C. Law §§ 3-302(1), 3-204(2) (footnote omitted)). For a plaintiff to establish physical possession of a note, "a plaintiff must show (1) possession of the note, either indorsed in blank or specially indorsed to the plaintiff, at the time the action was commenced; and (2) that the note was received by physical delivery." *E. Sav. Bank, FSB*, 631 F. App'x at 15; *In re Benyamin*, 587 B.R. 243, 244 (Bankr. S.D.N.Y. 2018), *on reconsideration*, 596 B.R. 789 (Bankr. S.D.N.Y. 2019), *aff'd*, No. 19-CV-1907 (RA), 2020 WL 2832815 (S.D.N.Y. June 1, 2020) ("New York law is clear that in order to have standing to file a proof of claim, or to foreclose on a mortgage, the holder of the note endorsed in blank must offer competent proof that it possesses the note.").

Defendants have cited no legal authority, and the Court is not aware of any, that would distinguish this case from those concluding that possession of a note indorsed in blank is sufficient, under New York law, to establish that a party is the holder of the note. In addition, other than pointing to the two versions of the Note at issue here, one indorsed in blank and one with Plaintiff's name added, Defendants have not identified any evidence that contradicts Plaintiff's assertion that it was in possession of the Note when this action began. Nor have Defendants cited any authority to suggest that adding a name to a note indorsed in blank somehow renders it void or invalid. In light of the uncontroverted allegations in the complaint, the evidence that the Mortgage was assigned from Trinity Financial Services, LLC to Plaintiff in September 2018 and recorded by the Queens County Clerk, and Defendants' failure to file a Rule 56.1 counterstatement, there is no evidence in the record from which to reasonably infer that Plaintiff came into possession of the Note

after this case was filed. Accordingly, the Court respectfully recommends finding that Plaintiffs had standing to initiate this action at the time it was commenced.[10]

## II. Plaintiff's Motion for Summary Judgment

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). "Put another way, summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-movant." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (alterations and quotation marks omitted).

The movant "'bears the burden of demonstrat[ing] the absence of a genuine issue of material fact.'" *Nick's Garage, Inc.*, 875 F.3d at 114 (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 323). Once the moving party has satisfied their

---

[10] The Court notes that Defendants have also moved to dismiss for lack of standing on the same grounds. (Defs.' Mem., ECF No. 63-1, ¶¶ 4, 7, 10.) "A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, because standing is a federal jurisdictional question." *McFarlane v. Roberta*, 891 F. Supp. 2d 275, 282 (D. Conn. 2012). For the same reasons discussed *supra*, the Court respectfully recommends denying Defendants' motion to dismiss arguments premised on lack of standing.

burden, "'the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 51 (E.D.N.Y. 2021) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Further, Rule 56(c) provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c); *Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 274 (E.D.N.Y. 2014).

When determining whether a movant is entitled to summary judgment, judges do not weigh the evidence or make credibility determinations to decide the truth of the matter, but instead determine "whether there is a genuine issue for trial." *Green v. Town of E. Haven*, 952 F.3d 394, 406 (2d Cir. 2020) (citing *Anderson*, 477 U.S. at 249, 255). District courts are "required to 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see*

*also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). In addition, courts "may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must review all of the evidence in the record." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 386 (2d Cir. 2020).

## B. *Prima Facie* Case for Foreclosure

"Under New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment on the loan secured by the mortgage." *Windward Bora LLC v. Baez*, No. 19-CV-5698, 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020) (quotation marks and citation omitted); *see also Builders Bank v. Charm Devs. II, LLC*, Nos. 09-CV-3935 & 09-CV-4410, 2010 WL 3463142, at *2 (E.D.N.Y. Aug. 30, 2010) ("[S]ummary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note." (citation omitted)). "Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has demonstrated its *prima facie* case of entitlement to judgment. . . . The burden then shifts to the defendant to raise a triable issue of fact, including with respect to any alleged defenses or counterclaims." *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414–15 (E.D.N.Y. 2018) (citing *Fleet Nat'l Bank v. Olasov*, 793 N.Y.S.2d 52, 52–53 (N.Y. App. Div. 2d Dep't 2005)).

As set forth above, Plaintiff has provided proof of the Note and the Mortgage at issue, both dated November 6, 2006, in the amount of $134,700. There is no dispute that Defendant Parvinder Tiwana originally executed the Note to WMC Mortgage in the amount of $134,700 (Note, ECF No. 1-1, at ECF pp. 21–27), and that Defendants signed the corresponding Mortgage. (Mortg., Ex. B to Compl., ECF No.

14

1-1, at ECF pp. 6–18.) Plaintiff also asserted in its 56.1 Statement, which has gone unrefuted by Defendants, that "Plaintiff was in physical possession and was the owner and holder of the note and mortgage when the complaint was filed." (Pl.'s 56.1 Statement, ECF No. 62-2, ¶ 8.) The record also includes documentation regarding the history of the assignment of the Mortgage, showing that the Mortgage was assigned to Plaintiff on September 18, 2018. (Assignment of Mortg., Ex. D to Compl., ECF No. 1-1, at ECF pp. 35–37.) Moreover, in response to the Court's inquiry about whether Defendants' default is a material issue in dispute, Defendants confirmed that it is not. (Defs.' Supp., ECF No. 67, at 2 ("[T]here is no material dispute that Defendants are in default on the Mortgage . . . .").) Finally, Plaintiff has submitted an affidavit from the Vice President of Wilmington PT Corp. that asserts Defendants defaulted by failing to pay the installment due on June 1, 2013, and that the default continues to date, which Defendants have not challenged.[11] (Devico Aff., ECF No. 62-3, ¶ 10.) Therefore, Plaintiff has made out a *prima facie* case that it is entitled to summary judgment on the foreclosure action.

---

[11] At a pre-motion conference before the Honorable Roanne L. Mann on January 13, 2022, Defendants' counsel acknowledged that the default occurred even earlier, and confirmed that the question of whether the loan was in default was not in dispute. (*See* Tr. of Pre-Mot. Conf., ECF No. 62-4, at ECF p. 121, ll. 15–21; *see also id.*, at ECF p. 122, ll. 8–12; *id.*, at ECF p. 154, ll. 1–4.)

### C. Defendants' Affirmative Defenses[12]

#### 1. *Compliance with RPAPL § 1304*

##### a. Requirements of RPAPL § 1304

The New York RPAPL establishes procedures to ensure proper notice in advance of a foreclosure action as follows:

> Pursuant to RPAPL [§] 1304(1), "at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, or borrowers at the property address and any other address of record, including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower." The statute requires that such notice be sent by registered or certified mail, and also by first-class mail, to the last known address of the borrower. "Strict compliance with RPAPL [§] 1304 notice to the borrower or borrowers is a condition precedent to the commencement of a foreclosure action."

*U.S. Bank Trust, N.A. v. Mehl*, 151 N.Y.S.3d 137, 140 (N.Y. App. Div. 2d Dep't 2021) (quoting *Citibank, N.A. v. Conti-Scheurer*, 98 N.Y.S.3d 273, 276 (N.Y. App. Div. 2d Dep't 2019)). "A plaintiff in a foreclosure action can demonstrate compliance with RPAPL § 1304 'with proof of the actual mailings, such as affidavits of mailing or domestic return receipts with attendant signatures, or proof of a standard office

---

[12] As set forth *supra* note 5, Defendants initially asserted in the answer that the action was barred by the statute of limitations. (Answer, ECF No. 13, ¶¶ 19–20.) The statute of limitations for a foreclosure action under New York law is six years. *Lubonty v. U.S. Bank Nat'l Ass'n*, 34 N.Y.3d 250, 261 (2019) (citing N.Y. C.P.L.R. § 213(4)); *see also 1042 II Realty, Inc. v. PHH Mortg. Corp.*, 582 F. Supp. 3d 142, 146 (S.D.N.Y. 2022). "For a mortgage payable in installments, 'separate causes of action accrue for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due.'" *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 78 (2d Cir. 2021) (alteration omitted) (quoting *Wells Fargo Bank, N.A. v. Burke*, 943 N.Y.S.2d 540, 542 (N.Y. App. Div. 2d Dep't 2012)). However, "'even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt.'" *Id.* (quoting *Ditmid Holdings, LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 120 N.Y.S.3d 393 (N.Y. App. Div. 2d Dep't 2020)); *see also Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 86–87 (E.D.N.Y. 2019). Defendants do not dispute that the Mortgage was in default within the six-year period before this case was initiated, nor do they point to any evidence that the Mortgage was accelerated. In addition, Defendants do not raise this defense in their cross-motion to dismiss and opposition to Plaintiff's motion for summary judgment; thus the defense is deemed abandoned. *Conklin*, 2023 WL 2537665, at *15.

mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure.'" *Miss Jones, LLC v. Viera*, No. 18-CV-1398 (NGG) (SJB), 2020 WL 1527141, at *1 (E.D.N.Y. Mar. 31, 2020) (quoting *CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 533 (2d Cir. 2020), *certified question accepted*, 34 N.Y.3d 1137 (2020), *and certified question answered*, 36 N.Y.3d 550 (2021)). "[P]roof of a standard office mailing procedure gives rise to a presumption that a notice was received, although that presumption may be rebutted by 'a showing that [the] routine office practice was not followed or was so careless that it would be unreasonable to assume that the notice was mailed.'" *Schiffman*, 948 F.3d at 533 (quoting *Nassau Ins. Co. v. Murray*, 46 N.Y.2d 828, 830 (1978)).

The New York Court of Appeals recently addressed the "showing a borrower must make to *rebut* the presumption created through proof of a standard office mailing procedure in the context of RPAPL 1304 notices." *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 556 (2021). The *Schiffman* court held that:

> [T]o rebut the presumption, there must be proof of a material deviation from an aspect of the office procedure that would call into doubt whether the notice was properly mailed, impacting the likelihood of delivery to the intended recipient. Put another way, the crux of the inquiry is whether the evidence of a defect casts doubt on the reliability of a key aspect of the process such that the inference that the notice was properly prepared and mailed is significantly undermined. Minor deviations of little consequence are insufficient.

*Id.* at 557.

### b. Analysis

Here, Plaintiff's Rule 56.1 statement indicates that Plaintiff instructed its counsel to prepare and send demand letters and to mail the 90-day notice to Defendants, which were both mailed on January 2, 2019. (Pl.'s 56.1 Statement, ECF No. 62-2, ¶¶ 4, 5.) Plaintiff also offers the affidavit of Yonel Devico, its Vice-

President, which asserts that both the demand and the 90-day notice were sent by first class mail and by certified mail on January 2, 2019. (Devico Aff., ECF No. 62-3, ¶¶ 11, 13.) The Devico affidavit further states that the 90-day notices "were sent in accordance with Plaintiff's counsel's mailing procedures." (*Id.* ¶ 13.)

Accordingly, in support of the current motion, Plaintiff has offered two kinds of proof to establish mailing of the 90-day notice as required by § 1304. First, Plaintiff has offered proof of "actual mailings" through an affidavit of mailing, copies of mailings, and U.S. Postal Service ("USPS") Certified Mail receipts with tracking numbers. (Jan. 2, 2019 Nierer Aff. of Mailing, ECF No. 62-4, at ECF p. 62; Affs. of Service, Ex. E to Pl.'s Mot. for Summary J., ECF No. 62-4, at ECF pp. 51–61.) Plaintiff has also offered an affidavit to establish the routine mailing procedures undertaken by counsel, arguing that those procedures are sufficient to establish a presumption of mailing. (*See* June 8, 2022 Nierer Aff. of Mailing Procedures, Ex. D to Weinreb Decl., ECF No. 62-4, at ECF p. 78.)

i. *Proof of Actual Mailing*

As to proof of actual mailing, the original complaint included an affidavit dated January 2, 2019, from Samantha Nierer, which was also included as an attachment to the current motion for summary judgment. It states in pertinent part, as follows:

> [O]n January 2, 2019, deponent served the 30 day Demand Letter and the New York Statutory 90 Day Notice with Housing Agency list by depositing a true copy by first class mail thereof in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, addressed to each of [Defendants Jasvir Tiwana and Parvinder S. Tiwana at 97-10 95th Avenue, Ozone Park, NY 11416].

(Jan. 2, 2019 Nierer Aff. of Mailing, ECF No. 62-4, at ECF p. 62; *see also* ECF No. 1-1, at ECF p. 50.) In addition, Plaintiff has produced copies of the demand and 90-day

notice, together with photocopies of envelopes — including four envelopes for each Defendant, two of which had affixed certified mail receipts for each Defendant. (*See* Affs. of Service, Ex. E to Weinreb Decl., ECF No. 62-4, at ECF pp. 51–61 (copies of mailings).) The 90-day notice states at the top that it was sent via regular mail and certified mail/return receipt requested and includes two certified mail receipt numbers next to Defendants' names, ending in 2377 and 2384, for Jasvir Tiwana and Parvinder Tiwana, respectively.[13] (*See id.* at ECF p. 56.)

Defendants deny receipt of the 90-day notice. (*See* Defs.' Mem., ECF No. 63-1, ¶ 29; Affs. of Defs. Parvinder Tiwana and Jasvir Tiwana, attached as Exs. A & B to Defs.' Mem., ECF Nos. 63-3 & 63-4, ¶¶ 11, 12).) However, "it is well settled that a bald denial of receipt is insufficient to establish, prima facie, that such notice was not mailed or delivered, or to raise a question of fact as to mailing or delivery." *Everhome Mortg. Co. v. Aber*, 151 N.Y.S.3d 55, 62 (N.Y. App. Div. 2d Dep't 2021), *aff'd*, 39 N.Y.3d 949 (2022).

As to actual mailing, Defendants argue that Plaintiff's attempt to prove mailing of the § 1304 notices is deficient in several respects. They contend that Plaintiff did not attach any affidavit of mailing the 90-day notice by certified or

---

[13] On the 90-day notice, the complete certified mail numbers next to Defendants' names are 7018 2290 0000 5209 2377, and 7018 2290 0000 5209 2384, for Jasvir Tiwana and Parvinder Tiwana, respectively. (Ex. E to Pl.'s Mot. for Summary J., ECF No. 62-4, at ECF p. 56.) In its response to Defendants' opposition, Plaintiff attached U.S. Postal Service ("USPS") tracking information for each of these numbers, which indicated that the items were "out for delivery" as of 9:12 a.m. on January 4, 2019, and further indicated that the items were "awaiting delivery scan." (Ex. B to Pl.'s Mem. in Opp'n to Cross Mot. and in Supp. of Summary J., ECF No. 64-3.) Defendants have also included USPS tracking information in support of their cross motion, which is inconsistent with the information provided by Plaintiff. With respect to the first tracking number, the results Defendants submitted state "status not available" as of the date of the results, July 12, 2022, as discussed *infra*. (USPS Tracking Details, Ex. G to Defs.' Mem., ECF No. 63-9, at ECF p. 2.) With respect to the second tracking number, Defendants appear to have included an extra digit (a 7), rendering the results irrelevant. (*Id.*, at ECF p. 3 (listing tracking number 7018 2290 0000 5209 23784).)

registered mail to Defendants to its motion for summary judgment, and that Plaintiff "failed to attach, as exhibits to the Motion, any documents establishing that the notices were actually mailed." (Defs.' Mem., ECF No. 63-1, ¶ 16; *see also id.* ¶ 17 (claiming that Plaintiff only attached the Jan. 2, 2019 Nierer Affidavit to the current motion for summary judgment).) Defendants further contend that (1) Plaintiff has failed to submit any documentation from the USPS indicating that the notice was sent by registered or certified mail; (2) there are no certified mail receipts, post marks, stamps, or return receipts attached to the 90-day notice included with Plaintiff's motion; and (3) Plaintiff's evidence that the notice was sent is deficient because there was no return receipt provided. (*Id.* ¶¶ 19, 21.) Relatedly, Defendants argue that the USPS tracking numbers "do not show any result for these specific certified mails" related to the § 1304 notices. (*Id.* ¶ 24.)

In support of these arguments, Defendants included USPS tracking search results as exhibits to their brief in support of Defendants' cross motion to dismiss and in response to Plaintiffs' motion for summary judgment. (July 12, 2022 USPS Tracking, Ex. G to Defs.' Mem., ECF No. 63-9.) For the certified mail receipt ending 2377, Defendants' tracking search results from USPS indicate that the status of the package was not available on July 12, 2022. (*Id.*) In response, Plaintiffs submitted USPS tracking information from January 4, 2019 in its reply, which suggests that the certified mailings went out, but does not establish that they were delivered. (*Compare* Ex. B to to Pl.'s Mem. in Opp'n to Cross Mot. and in Supp. of Summary J., ECF No. 64-3, *with* July 12, 2022 USPS Tracking, Ex. G to Defs.' Mem., ECF No. 63-9, at ECF p. 2.)

In ascertaining whether these competing USPS tracking results raise a genuine material issue in dispute, the Court takes judicial notice that the USPS

website states that it stores tracking records related to certified mail for two years.[14]

*See* "How can I use USPS Tracking®?," *available at* https://faq.usps.com/s/article/

USPS-Tracking-The-Basics#How_can_I_use_USPS_Tracking (last visited June 1,

2023); *see Miss Jones LLC v. Shahid*, No. 17-CV-716 (AMD) (LB), 2022 WL 4642716

(E.D.N.Y. Sept. 30, 2022) (rejecting argument that provision of § 1304 notice was not

sufficient where USPS tracking results showed that the item was "in transit" and

taking judicial notice of USPS tracking procedures). Defendants' purported search

results for this tracking number are dated July 12, 2022, more than three years after

the mailings. (USPS Tracking Details, Ex. G to Defs.' Mem., ECF No. 63-9 (dated July

12, 2022).) In contrast, Plaintiff's USPS tracking results show that, as of January 4,

2019, the mailings associated with the tracking numbers used to mail the 90-day

notices were "out for delivery." (Ex. B to Pl.'s Mem. in Opp'n to Cross Mot. and in

Supp. of Summary J., ECF No. 64-3, at ECF p. 2.)

      Defendant do not cite any cases in which a court has found that the RPAPL

§ 1304 notice was deficient because of a failure to prove actual delivery by certified

or registered mail. *Cf. Empire Cmty. Dev., LLC v. Giambalvo-West*, No. 19-CV-5341,

2020 WL 9813022, at *4–5 (E.D.N.Y. Mar. 6, 2020) (finding § 1304 compliance

properly demonstrated through proof of the actual mailings even though one of the

---

[14] *Cf. Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (finding it "clearly proper to take judicial notice" of "documents retrieved from official government websites"); *see also Cangemi v. United States*, 13 F.4th 115, 124 n.4 (2d Cir. 2021). On a similar issue, in *Miss Jones*, the Honorable Ann M. Donnelly recently took judicial notice of the USPS's "frequently asked questions" page, which explains that "[t]he absence of a delivery scan on a mailpiece does not necessarily indicate that the item was not delivered. It is possible the piece was delivered but the scan was not captured." *See* U.S. Postal Serv., "What If My Item Was Received, But Not Scanned As Delivered?," *available at* https://faq.usps.com/s/article/USPS-Tracking-The-Basics#How_can_I_use_USPS_ Tracking (last visited June 1, 2023). *See Miss Jones LLC v. Shahid*, 2022 WL 4642716, at *5.

mailings was "returned as unclaimed" according to the USPS tracking number associated with it).

Rather, in their reply in support of their cross motion to dismiss, Defendants argue that the Court should strike Plaintiff's USPS tracking information because it was not included as part of Plaintiff's opening motion and was offered for the first time as an exhibit to Plaintiff's reply brief. (*See* Defs.' Mem. of Law in Further Supp. of Cross Mot., ECF No. 65, ¶¶ 19–21; *see also* Ex. B to Pl.'s Mem. in Opp'n to Cross Mot. and in Supp. of Summary J., ECF No. 64-3 (Plaintiff's tracking data).) However, as the Supreme Court observed in *Celotex*, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323 (emphasis in original). When evidence submitted on reply "'merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers . . . may properly address those issues.'" *Kelly v. Times/Review Newspapers Corp.*, No. 14-CV-2995, 2018 WL 1701999, at *8 (E.D.N.Y. Feb. 15, 2018) (quoting *Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1457 (E.D. Wis. 1993)). So is the case here, where the USPS tracking data provided by Plaintiff on reply was submitted in direct response to the purported USPS tracking information supplied by Defendants with their opposition brief.

Rather than viewing Plaintiff's tracking data as a new argument raised on reply, the tracking data is better understood as rebuttal evidence offered to illustrate that Defendants' tracking data does not raise a genuine material issue of fact for trial. The Court thus recommends denying Defendants' request that the USPS tracking data be stricken and that Plaintiff's tracking data be considered for the limited purpose of negating the arguments raised by Defendants' faulty tracking

data.[15] (*See* July 12, 2022 USPS Tracking, Ex. G to Defs.' Mem., ECF No. 63-9.) It is also worth noting that Plaintiff's tracking data, which does not conclusively establish delivery in any event, is unnecessary to establish proof of mailing in light of Plaintiff's evidence of routine mailing procedures, as discussed in the next section.

ii. *Proof of Mailing Procedures*

In support of the current motion for summary judgment, Plaintiff submitted an affidavit from Ms. Nierer, styled as an "Affidavit of Mailing Procedures for RPAPL § 1304 Notices and Default Notices." (June 8, 2022 Nierer Aff. of Mailing Procedures, Ex. D to Weinreb Decl., ECF No. 62-4, at ECF p. 78.) In Ms. Nierer's affidavit, she describes the procedure used by her law firm to generate and mail both default notices and 90-day notices, representing that it is the standard practice of the business to generate the letters, review them for accuracy, and address the envelopes "using the addresses for the Borrower(s) provided by the foreclosing Plaintiff."[16] (*Id.* at ECF p. 80, ¶ 7.) At that point, the notices are scanned and copied

---

[15] In addition, the Court briefly notes that Defendants' argument that the documents should be stricken was raised in their reply filed in support of their cross motion, which effectively served as a sur-reply to Plaintiff's reply in support of the motion for summary judgment. Accordingly, this is not a scenario where the non-movant did not have an opportunity to respond to arguments or evidence raised in a reply. *Cf. Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992), *as amended* (Sept. 23, 1992) ("Where new evidence is presented in a party's reply brief or affidavit in further support of its summary judgment motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion.").

[16] RPAPL § 1304(2) states: "The notices required by this section shall be sent by such lender, assignee (including purchasing investor) or mortgage loan servicer to the borrower, by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." Plaintiff states that "[t]he 90-Day Notices were addressed to the borrowers, Jasvir Tiwana and Parvinder S. Tiwana at the Property Address, 97-10 95th Avenue, Ozone Park, NY 11416 (the 'Property Address'), which was also the last known address for the Borrower." (June 8, 2022 Nierer Aff. of

into the firm's business records. (*Id.*) The "letters are then inserted into the addressed envelopes with the list of at least five (5) housing counseling agencies," the envelopes are sealed, postage is applied, and copies of the sealed envelopes are then scanned and uploaded to the firm's business records. (*Id.* ¶ 8.) The letters are then physically delivered to a bin, from which they are retrieved by the USPS daily. (*Id.* ¶ 9.) As for certified mailings, the firm scans the certified mail label and deposits the certified mailings into the firm's mail bin, which is retrieved by the USPS daily. (*Id.* ¶ 10.) Ms. Nierer's affidavit described how she followed these procedures for the RPAPL § 1304 notices at issue in this case, and attached copies of the envelopes and mailings. (*Id.* at ECF pp. 81–82, ¶¶ 14–19; *see also* Exs. A–C to the June 8, 2022 Nierer Aff. of Mailing Procedures, ECF No. 62-4, at ECF pp. 88–95 (including a copy of the 90-day notice, copies of the envelopes, and certified mail receipts ending in 2377 and 2384 as to Jasvir Tiwana and Parvinder Tiwana, respectively).)

Defendants counter with several arguments concerning Plaintiff's routine office practices. (Defs.' Mem., ECF No. 63-1, ¶¶ 16, 17, 19, 21–27; *see also* Answer, ECF No. 13, ¶ 18.) Defendants also contend that the affidavits Plaintiff submitted to establish its mailing procedures are inconsistent and not reliable. (*Id.* ¶ 22 (comparing the March 26, 2020 Nierer Affidavit of Mailing Procedures, prepared in connection with Plaintiff's first motion for summary judgment (filed at ECF No. 35-8), to the June 8, 2022 Nierer Affidavit of Mailing Procedures, attached as Ex. D to the Weinreb Declaration accompanying Plaintiff's second motion for summary

---

Mailing Procedures, Ex. D to Weinreb Decl., ECF No. 62-4, at ECF p. 81, ¶ 15.) Although the Court notes that Defendants were served at an address in Virginia at the initiation of this lawsuit (*see* Affs. of Service, ECF Nos. 8, 9), Defendants have not identified any evidence in the record to contradict Plaintiff's assertion that the notices were mailed to the last known address of the borrower and the residence subject to the mortgage.

judgment, ECF No. 62-4, at ECF p. 77).) As to the specific mailings here, Defendants argue that Ms. Nierer's June 8, 2022 Affidavit "does not say what happened after she tendered the notices to her law-firm's in-house [mail] bin." (*Id.* ¶ 23.) Defendants also contend that Plaintiff's affiant, Ms. Nierer, "did not review the business record diligently, nor did she strictly comply with her law firm's mailing procedures if there was any." (*Id.* ¶ 25.)

As noted above, in support of the current summary judgment motion, Plaintiff attached both the January 2, 2019 Nierer Affidavit and the June 8, 2022 Nierer Affidavit, along with copies of the mailings. (*See* Jan. 2, 2019 Nierer Aff. of Mailing, ECF No. 62-4, at ECF p. 62; June 8, 2022 Nierer Aff. of Mailing Procedures, Ex. D to Weinreb Decl., ECF No. 62-4, at ECF p. 78; Affs. of Service, Ex. E to Pl.'s Mot. for Summary J., ECF No. 62-4, at ECF pp. 51–61.) Collectively, these affidavits and documents provide evidence of mailing procedures that include sending the notices by both first class and certified mail.

Now turning to the alleged inconsistencies in Ms. Nierer's affidavits, Defendants argue that her latest affidavit is inconsistent with her prior affidavit of mailing procedures, which Plaintiff submitted in support of its first motion for summary judgment. Defendants contend that, due to the discrepancies, Ms. Nierer's June 8, 2022 affidavit "cannot be considered a credible proof of mailing the 90-day notice by certified or registered mail." (Defs.' Mem., ECF No. 63-1, ¶ 22.) In Ms. Nierer's first affidavit of mailing procedures, Defendants point out that she represented that "'[the law firm] printed four (4) copies of the RPAPL § 1304 Notice,'" and that, "'[u]pon printing, a member of [the law firm] folded and stuffed the four letters into properly marked envelopes.'" (*Id.* (quoting Mar. 26, 2020 Nierer Aff. of Mailing Procedures, Ex. H to Defs.' Mem., ECF No. 63-10, ¶¶ 21–22).)

Defendants argue that these statements are inconsistent with her more recent affidavit, where Ms. Nierer claims that she personally generated and mailed the § 1304 notices. (*Id.* (citing June 8, 2022 Nierer Aff. of Mailing Procedures, Ex. D to Weinreb Decl., ECF No. 62-4, at ECF pp. 78–86, ¶¶ 2, 15).) Defendants' argument ignores other relevant parts of Ms. Nierer's March 26, 2020 affidavit.[17] In that affidavit, she specifically stated that a review of the firm's business records showed that she personally mailed the § 1304 notices. (Mar. 26, 2020 Nierer Aff. of Mailing Procedures, Ex. D to Weinreb Decl., Pl.'s First Mot. for Summary J., ECF No. 35-8, at ECF p. 10, ¶ 22 n.1.)

Defendants further note that the March 26, 2020 Affidavit represented that the § 1304 notices were sent with tracking numbers 7018 0360 0000 5209 2377 and 7018 0360 0000 5209 2384. (Defs.' Mem., ECF No. 63-1, ¶ 22 (quoting Mar. 26, 2020 Nierer Aff. of Mailing Procedures, Ex. H to Defs.' Mem., ECF No. 63-10, ¶ 22).) These tracking numbers appear to be in error.[18] (*Id.*) However, the attachments to the March affidavit reflect the tracking numbers affixed to the 90-day notice and certified mail envelopes. (*Id.*) Upon a review of all of the evidence in the record, the Court concludes that Ms. Nierer's typographical error is insufficient to raise a material issue of fact.

---

[17] Indeed, Defendants did not include the attachments to the March 26, 2020 Nierer affidavit with their cross-motion and opposition. (*See* Mar. 26, 2020 Nierer Aff. of Mailing Procedures, Ex. H to Defs.' Mem., ECF No. 63-10.)

[18] Although the March 26, 2020 Nierer affidavit appears to err by stating that the tracking numbers were 7018 **0360** 0000 5209 2377 (for Jasvir Tiwana) and 7018 **0360** 0000 5209 2384 (for Parvinder S. Tiwana), Plaintiff's other exhibits related to the mailing of the 90-day notices, including the attachments to the March 26, 2020 affidavit, consistently show tracking numbers 7018 **2290** 0000 5209 2377 and 7018 **2290** 0000 5209 2384. (*Compare* Mar. 26, 2020 Nierer Aff. of Mailing Procedures, ECF No. 35-8, at ECF p. 10, ¶ 22, *with* Certified Mail Envelopes, ECF No. 35-8, at ECF pp. 20, 24, *and* 90 Day Notice, ECF No. 35-8, at ECF p. 21, *and* USPS Certified Mail Receipts, ECF No. 35-8, at ECF p. 26.)

As for Defendants' remaining arguments, they have not offered any specific facts or record citations that establish a deviation in the mailing procedures that would "rebut the presumption created through proof of a standard office mailing procedure in the context of RPAPL 1304 notices." *Schiffman*, 36 N.Y.3d at 556. As the New York Court of Appeals recently clarified, "to rebut the presumption, there must be proof of a material deviation from an aspect of the office procedure that would call into doubt whether the notice was properly mailed." *Id.* at 557. Defendants have not identified such a deviation in this case.

Here, although the record does not establish whether the § 1304 notices were actually delivered by certified mail, Defendants have not offered any specific, articulable evidence that raises a material issue of fact for trial on the question of whether the 90-day notices were sent by certified mail in accordance with the standard mailing procedures utilized by Plaintiff's counsel. Accordingly, Defendants have failed to rebut the presumption that the notice was received, and have otherwise failed to identify any material facts in dispute on the question of Plaintiff's compliance with RPAPL § 1304. *See Schiffman*, 948 F.3d at 533 ("[P]roof of a standard office mailing procedure gives rise to a presumption that a notice was received . . . .").

2. *Compliance with RPAPL § 1302*

Finally, Defendants argue that Plaintiff has failed to establish that it was the actual holder of the Note and Mortgage at the time the case was commenced. (Defs.' Mem., ECF No. 63-1, ¶¶ 8, 10.) In addition to the standing concerns discussed *supra*, Defendants contend that this is a violation of RPAPL § 1302, which provides in pertinent part as follows:

Any complaint served in a proceeding initiated pursuant to this article relating to a high-cost home loan or a subprime home loan, as such terms are defined in section six-l and six-m of the banking law, respectively, must contain an affirmative allegation that at the time the proceeding is commenced, the plaintiff:

(a) is the owner and holder of the subject mortgage and note, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note . . . .

N.Y. Real Prop. Law § 1302.

As discussed above, Plaintiff alleged in the complaint that "Plaintiff is in physical possession and is the owner and holder of said original Note with endorsements and allonges and Mortgage." (Compl., ECF No. 1, ¶ 16.) In addition, as discussed at length, Plaintiff has produced the Note and documents evidencing the assignment of the Mortgage from Trinity Financial Services, LLC to Plaintiff in September 2018, and Defendants have not pointed to any record evidence on this issue that raises a genuine dispute of fact. "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021). In the absence of any non-speculative evidence identified by Defendants, the Court does not find a genuine issue of material fact in dispute as to Plaintiff's physical possession of the Note at the time of the filing of this action that could reasonably lead a jury to find for Defendants on this issue.

## CONCLUSION

For the foregoing reasons, Defendants' proffered defenses do not overcome Plaintiff's *prima facie* case for foreclosure and entitlement to summary judgment. In addition, Defendants' motion to dismiss, premised on Plaintiff's alleged lack of

standing and Defendants' supposed failure to comply with RPAPL §§ 1302 and 1304, is without merit. Accordingly, the Court respectfully recommends that Plaintiff's motion for summary judgment be granted, that an order be entered directing foreclosure and sale of the Property, and that Defendants' cross motion to dismiss be denied.

*   *   *   *   *

This Report and Recommendation will be filed electronically. Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Diane Gujarati, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated:  Brooklyn, New York
　　　　June 12, 2023

_Taryn A. Merkl_
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE